IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


LINDA D. HELM                                                    PLAINTIFF


        v.                              CIVIL NO. 12-3018


MICHAEL J. ASTRUE[1], Commissioner
Social Security Administration                                  DEFENDANT


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

        Plaintiff, Linda D. Helms, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claims for period of disability and disability insurance benefits

(DIB) and for disabled widow's insurance benefits (DWB) under the provisions of Title II of the

Social Security Act (Act).  In this judicial review, the Court must determine whether there is

substantial evidence in the administrative record to support the Commissioner's decision.  See

42 U.S.C. § 405(g).

I.      **Procedural Background:**

        Plaintiff protectively filed her current applications for DIB and DWB on August 27,

2010, alleging an inability to work since January 1, 2007, due to limited mobility, concentration

---

[1]Carolyn Colvin became the Acting Social Security Commissioner on February 14, 2013.  Pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, Carolyn Colvin has been substituted for Commissioner  Michael
J. Astrue as the Defendant in this suit.

problems, left eye problems, and major back problems.  (Tr. 162, 169, 221).  An administrative

hearing was held on October 25, 2011, at which Plaintiff appeared with counsel and testified.

(Tr. 22-77).

By written decision dated November 18, 2011, the ALJ found that during the relevant

time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr.

12).  Specifically, the ALJ found Plaintiff had the following severe impairments: lumbar spinal

stenosis, status postoperative; a mood disorder; a disruptive behavior disorder; and a cognitive

disorder. However, after reviewing all of the evidence presented, the ALJ determined that

Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the

Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 13).  The ALJ

found Plaintiff retained the residual functional capacity (RFC) to:

> lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or
> walk up to six hours in an eight-hour day and sit up to six hours in an eight-hour
> day.  In addition, she can only occasionally climb, balance, crawl, kneel, stoop
> and crouch.  The claimant is further limited and can do work where interpersonal
> contact is incidental to the work performed and where the complexity of tasks is
> learned and performed by rote with few variables and little judgment required.
> The supervision required is simple, direct and concrete.

(Tr. 15).  With the help of a vocational expert, the ALJ determined Plaintiff could perform work

as a motel housekeeper, a package mail sorter/routing clerk, and a food prep.  (Tr. 20).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which

denied that request on December 30, 2011.  (Tr. 1-3).  Subsequently, Plaintiff filed this action.

(Doc. 1).  Both parties have filed appeal briefs, and this case is before the undersigned for report

and recommendation.  (Docs. 9, 10).

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Evidence Presented:

At the time of the administrative hearing before the ALJ on October 25, 2011, Plaintiff was fifty-two years of age, and her past relevant work consisted of work as a barber.  (Tr. 25, 30, 48).

The medical evidence during the relevant time period reflects the following.  On January 4, 2007, Plaintiff was seen at the Facey Medical Group for a gastrointestinal visit.  (Tr. 334). Plaintiff reported a problem with the passage of thin stool.  Dr. Jihad Batah noted Plaintiff was recently diagnosed with a small hyperplastic polyp which was removed from her sigmoid colon. Plaintiff was advised to avoid seeds, nuts and popcorn, and to maintain a high-fiber diet.

On June 11, 2007, Plaintiff was seen at the Facey Medical Group requesting lab work. (Tr. 333, 386, 424).  Plaintiff reported that she was not working due to her back pain, and she requested a referral for physical therapy.  Plaintiff reported that in February she was not wearing her glasses and accidentally drank a cleaning agent which caused some gastrointestinal issues, and she felt she still had some residual problems.  Plaintiff reported that she bought a house in Arkansas, and that she was going back and forth, but spent most of her time here in California. Plaintiff reported that she was also under a lot of stress due to her teenage daughter. Plaintiff was assessed with hypertension, hypothyroidism and chronic low back pain.

-3-

On June 13, 2007, the Vision Center recommended that Plaintiff be seen by an ophthalmologist for an evaluation. (Tr. 442). On August 24, 2007, Plaintiff was evaluated for macular degeneration. (Tr. 443).

On May 20, 2008, Plaintiff was seen at Facey Medical Group for a follow-up on her test by Dr. Esther Lee. (Tr. 330-332, 384-385, 417-420). Clinic notes indicated that Plaintiff had hypertension and hypothyroidism. Plaintiff reported that she had been on Nutrisystem and was exercising and had successfully lost weight. Plaintiff reported that she still smoked and had tried to quit with Chantix which was not covered by her insurance. Plaintiff reported that she needed a prescription renewal for Flexeril for her low back pain. Plaintiff also requested a pain medication for her low back pain. Dr. Lee recommended that Plaintiff return for a complete physical.

On May 12, 2009, Plaintiff was seen by Mark L. Ungerank, DC. (Tr. 483-486). Plaintiff complained of lumbar back pain that radiated into her hips and legs. Plaintiff also reported tingling in her upper arm and stiffness in her neck. Plaintiff reported having difficulty standing for prolonged periods of time. Plaintiff reported that she took medication for high blood pressure, her thyroid and nervousness. Plaintiff reported she also suffered from dizziness, fatigue, sleeping problems, cold sweats, mood swings, loss of smell, constipation, and tension. Plaintiff received adjustments and was to return in two days. The record showed Plaintiff continued to receive adjustments through May and June of 2009. (Tr. 478-491).

On July 17, 2009, Plaintiff, upon referral by Dr. Ungerank, was seen as a new patient at the Springfield Neurological and Spine Institute. (Tr. 479-482). Plaintiff complained of a long history of low back pain that worsened with prolonged standing or driving. Plaintiff reported

-4-

that her pain significantly limited her activity, and her ability to interact with others. Plaintiff also reported that she was unable to work because of her back pain. Plaintiff reported that chiropractic treatment had been most helpful, though the relief was temporary.

On July 27, 2009, Plaintiff underwent lumbar spine x-rays that revealed an unstable area at L5-S1 with some slippage anteriorly of L5 on S1 during flexion extension as compared to the other vertebral bodies/disk spaces. (Tr. 612-613, 749). Marked vascular disease was also present. Plaintiff also underwent a MRI of the lumbar spine which showed abnormalities. (Tr. 613-614).

On August 4, 2009, Plaintiff was seen by Dr. Ungerank. At that time, Plaintiff reported a worsening of pain. Plaintiff was to return in one week. (Tr. 491-492).

On August 28, 2009, Plaintiff was seen by Dr. Thomas Briggs at the Springfield Neurological and Spine Institute to review the MRI and x-rays results. (Tr. 477-478). Plaintiff complained of constant back pain with bilateral lower extremity pain. Plaintiff reported that she had noticed some relief with the use of Cyclobenzaprine. Dr. Briggs noted that he discussed with Plaintiff the options available for treatment, and that Plaintiff wished to proceed with surgery.

On September 13, 2009, Plaintiff was seen at the Springfield Neurological and Spine Institute. (Tr. 447-451, 473-476). Plaintiff reported a long history of low back pain. Plaintiff reported that this back pain limited her activity, and her ability to interact with others. Plaintiff reported she was unable to work due to this back pain. Plaintiff denied fevers, chills, appetite loss, fatigue, malaise or weight loss. Plaintiff also complained of blurred vision and anxiety. Plaintiff was diagnosed with lumbar radiculopathy, lumbago, and spinal stenosis. It was

AO72A
(Rev. 8/82)

recommended that Plaintiff undergo a lumbosacral decompression with instrumentation and fusion.

On September 17, 2009, Plaintiff was admitted into Cox Health to undergo a bilateral laminectomy at L5-S1 with a diskectomy and an interbody fusion performed by Dr. Briggs. (Tr. 444-446, 452-458, 471-472). At the time of discharge on September 21, 2009, Plaintiff was ambulating without assistance, and reported that her back and leg pain were significantly improved.

On October 16, 2009, Plaintiff returned to Dr. Briggs for a follow-up appointment. (Tr. 470). Plaintiff reported that her back pain was improved. Plaintiff reported experiencing some pain with sitting and walking. Plaintiff was cleared to drive, and placed on a ten pound lifting restriction.

On December 2, 2009, Plaintiff returned to Dr. Briggs for a follow-up appointment. (Tr. 468-). Plaintiff reported feeling like something was sticking her above her incision. Plaintiff also reported some right hip pain, but noted that she was doing better. Plaintiff was to undergo aquatherapy.

On December 8, 2009, Plaintiff was admitted into Baxter Regional Medical Center to undergo a bilateral upper and lower blepharoplasty with a face and neck lift. (Tr. 604-608).

On March 3, 2010, Plaintiff returned to Dr. Briggs for a follow-up appointment. (Tr. 466-467). Plaintiff reported that she was better than prior to her surgery. Dr. Briggs noted Plaintiff had to stop using Chantix due to side effects. X-rays of Plaintiff's spine revealed healing of the lumbosacral fusion. Plaintiff was to increase activity as tolerated.

AO72A
(Rev. 8/82)

On June 4, 2010, Plaintiff reported that she had fallen at work eight days ago, and that she now had left knee pain. (Tr. 459-461). Dr. Stacy L. Wilbanks noted Plaintiff was being seen as a "Workmen's Comp" patient. Plaintiff reported pain with standing, trouble walking, and trouble working. Plaintiff denied any other symptoms. Plaintiff was diagnosed with a sprain and strain of the knee and leg. Plaintiff was to remain off of work for one week, after which she could return to work without restrictions on June 11, 2010.

In June of 2010, Plaintiff received treatment from Dr. Ungerank on four separate occasions. (492-506). Plaintiff was also seen once in August of 2010. (508).

On July 9, 2010, Plaintiff returned to Dr. Briggs for a follow-up appointment. (Tr. 464-465). Plaintiff complained of low back pain. Plaintiff reported that she fell at work on May 27, 2010, after slipping on some grease. Plaintiff reported an immediate onset of left hip, buttock, and left knee pain. Plaintiff reported that she was recently seen by a family doctor, and that x-rays of her knee were performed. Plaintiff reported that she tried to file with "Work Comp," but never received a call back. Plaintiff complained of constant pain across the low back that was aggravated by standing and cooking. Plaintiff also reported intermittent burning pain in the posterior left thigh. Plaintiff reported that her knee pain was better. Plaintiff reported she took Aleve for pain control from which she received little relief. X-rays of the lumbar spine were performed. (Tr. 462). Plaintiff was diagnosed with probable SI joint strain and inflammation. Dr. Briggs recommended SI joint injections.

On July 19, 2010, Plaintiff was seen at the Combs Family Practice for a thyroid and blood pressure follow-up appointment. (Tr. 744).

-7-

On September 3, 2010, Plaintiff underwent a neuropsychological evaluation performed by Dr. Vann Arthur Smith.  (Tr. 510-513).  After evaluating Plaintiff, Dr. Smith diagnosed Plaintiff with a cognitive disorder and opined that Plaintiff was disabled.  Dr. Smith also completed a mental RFC assessment opining that Plaintiff was unable to work.  (Tr. 514-518).

In a letter dated September 15, 2010, Kari L. Priborsky, O.D., indicated that she had seen Plaintiff on three occasions, April 10, 2007, September 10, 2008, and August 12, 2010.  (Tr. 542-548).  Dr. Priborsky noted that on the first two visits Plaintiff showed a low amount of distance prescription and that Plaintiff had presbyopia which required glasses for near vision. Plaintiff's vision was noted as correctable to 20/20.  On the third visit, Plaintiff had the same prescription although Plaintiff also had a little bit of lid droop in both eyes that was not significant.  Plaintiff was noted as beginning to show signs of cataracts in each eye. Plaintiff was noted to have vision correctable to 20/20.

On October 21, 2010, Dr. Jim Takach, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; and could push or pull unlimited, other than as shown for lift and/or carry. (Tr. 550-559).  Dr.  Takach opined Plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl, but never climb ladders/ropes/scaffolds. Dr. Takach opined that manipulative, visual, communicative or environmental limitations were not evident.

On November 22, 2010, Plaintiff underwent a consultative mental diagnostic evaluation performed by Dr. Robert L. Hudson.  (Tr. 560-563).  Dr. Hudson noted that Plaintiff reported

-8-

she had a spinal operation after which she was cleared to resume work. Plaintiff reported that she obtained a job at a local restaurant where she worked for a couple of months until she fell and hurt herself. Plaintiff reported experiencing depression secondary to the inability to work. Plaintiff also reported a long-standing sleep difficulty, and panic attacks for which she took medication. Dr. Hudson noted that Plaintiff also had extensive work done on an infected jaw bone, and that Plaintiff was scheduled to undergo left eye surgery in December. Plaintiff reported that she was not being treated my a mental health professional. Plaintiff reported having a troubled childhood, and that she was widowed in 1990, and that she received counseling for a year following her husband's death. Plaintiff reported that it was at that time that she started taking Xanax, and that she had continued to take it for her sleeping difficulties and her panic attacks. Dr. Hudson noted that it was not clear what adequate psychiatric treatment would be for Plaintiff, but that she would probably benefit from continued medication management and counseling.

After evaluating Plaintiff, Dr. Hudson opined that Plaintiff clearly had problems with delayed recall, but that Plaintiff retained enough to be per se within normal limits. Dr. Hudson opined that there was no significant limitations in Plaintiff's adaptive ability. Dr. Hudson noted Plaintiff was able to take care of herself and to shop as needed. Dr. Hudson noted that there appeared to be no significant limitations with Plaintiff's ability to interact socially. Dr. Hudson noted that Plaintiff had a number of friends with whom she was in contact, had lunch, and shopped. Dr. Hudson noted that Plaintiff did not read much due to her vision problems. However, Plaintiff reported that she had read for pleasure and that she had filled out some reports. Dr. Hudson noted that Plaintiff had cognitive limits in that she had felt panicky when

-9-

there was a tornado warning while she was at work, and that she reported that she had left a stove on in her own home.  Dr. Hudson noted that Plaintiff had the ability to attain and sustain concentration within normal limits.  Dr. Hudson also reported no significant limits regarding Plaintiff's persistence or ability to complete tasks timely.

On November 23, 2010, Dr. Kay M. Gale, a non-examining medical consultant, completed a mental RFC assessment stating Plaintiff had moderate limitations in the following areas: the ability to understand and remember detailed instructions; the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to make simple work-related decisions; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to accept instructions and respond appropriately to criticism from supervisors; and the ability to set realistic goals or make plans independently of others.  (Tr. 581-584).  Dr. Gale made the following additional comments:

> Per the eval dated 9/3/2010 and the CE dated 11/22/2010 this 52 year old woman does have a cognitive disoder (sic) with limitations noted in delayed recall.  She has some difficulting (sic) expressing herself clearly.  She is not at the range of MR in her abilities.  She is alert and fully oriented.  She reports some depression related to not being able to work due to physical complaints.  At the CE she had mild dysthymia and an underlying agitation.  Her thoughts were logical and goal directed.  She is able to care for her personal needs.  She shops and manages to find her way if she gets lost when going to Mt Home.  She has a number of friends and goes out for lunch.  She doesn't like crowds.
>
> Based on all the evidence, the claimant is able to perform work where interpersonal contact is incidental to work performed, where the complexity of the task is learned and performed by rote with few variables and little judgment involved, and where supervision is simple, direct, and concrete.

-10-

She has the ability to do unskilled work.

(Tr. 583).

On the same date, Dr. Gale completed a psychiatric review technique form indicating Plaintiff had mild restrictions of her activities of daily living; moderate difficulties in maintaining social functioning; moderate deficiencies of concentration persistence or pace; and had no episodes of decompensation. (Tr. 567-580). On March 8, 2011, after reviewing the evidence of record, Dr. Jerry R. Henderson, affirmed Dr. Gale's assessment as written. (Tr. 656).

On November 29, 2010, Plaintiff was admitted into Baxter Regional Medical Center to undergo a MRI of the lumbar spine. (Tr. 587, 677, 745). The impression was as follows:

> 1. Postsurgical changes at the L5-S1 level with small annular tear at L5-S1 noted.
> 2. Broad-based degenerative disc bulge at L4-L5 slightly paracentral to the left resulting in mild bilateral left greater than right neuroforaminal narrowing.
> 3. Mild degenerative facet hypertrophy and ligamentum flavum thickening at L4-L5 and L5-S1 seen.

(Tr. 588). Dr. Kyle McAllister further stated:

> Subtle change in the lower lumbar spine, but nothing that makes me think that there is a pronounced injury to the area. Actually, the activity appears be (sic) slightly more pronounced on the right than the left. In this patient who is having left-sided low back pain and has undergone previous surgery. There certainly is activity present at the L4-L5 level, but one would expect there to be some activity around this area status post surgery, and even if the patient fell and injured the bone to some degree. I would expect some mild activity in the healing bone, but this does not have the appearance of a compression fracture or a severe fracture at this time.

(Tr. 589, 678).

-11-

On November 30, 2010, Dr. Takach, opined that there was insufficient medical evidence to assess impairment severity or functional ability as of September 30, 2008, with a prescribed period of September 1, 2001, through September 30, 2008. (Tr. 616). On March 9, 2011, Dr. Denise Greenwood affirmed Dr. Takach's opinion. (Tr. 662).

On November 30, 2010, Dr. Gale, a non-examining medical consultant, opined that there was insufficient evidence to rate Plaintiff's mental impairment as of the end of the prescribed period in September 2008. (Tr. 617).

On December 3, 2010, Plaintiff complained of left-sided low back pain and pain across the low back that radiated into both hips and her lateral left thigh. (Tr. 638-652, 663-668). Plaintiff reported that her pain was unchanged since her previous visit in October. Plaintiff was also in for a follow-up regarding her bone scan and her MRI of the lumbar spine. Dr. Gregory Ricca noted Plaintiff was sent by her Workman's Compensation Insurance Company. Dr. Ricca mentioned to Plaintiff that physical therapy or a pain clinic might help. Dr. Ricca noted that he had evaluated Plaintiff and her studies thoroughly and that he could not find a cause of her symptoms. Dr. Ricca noted that Plaintiff's examination and studies were normal. Dr. Ricca agreed with Plaintiff that a functional capacity evaluation would be "great."

In a letter dated January 3, 2011, Dr. Gerald T. Ware, indicated that Plaintiff underwent a 23-gauge vitrectomy surgery on her left eye secondary to a dense epimacular membrane. (Tr. 618, 619-624). Dr. Ware noted that he was pleased to report that Plaintiff's vision had already improved measuring 20/60 J3. Plaintiff was to return in about three months unless she noted acute visual changes or problems.

-12-

On January 18, 2011, upon a referral by Dr. Ricca, Plaintiff underwent a Functional Capacity Evaluation performed by Rick Byrd, M.Ed, CETT, CSDA.  (Tr. 625-637, 720-732). Plaintiff demonstrated the ability to perform light work with limitations.

The evidence revealed that Plaintiff received physical therapy from February 1, 2011, through May 19, 2011.  (Tr. 680-714).

On March 9, 2011, Plaintiff returned to Dr. Ricca's office complaining of left-sided low back pain that went into both hips and her lateral left thigh.  (Tr. 669-674).  Plaintiff reported she was told by the physical therapist that her hip was out of line.  Plaintiff reported that physical therapy sessions were helping, and that she was told she needed eight more sessions. Plaintiff stated "It's been almost 10 months of pain and I'm finally out of pain."  Plaintiff reported that her recent eye surgery did not help.  Dr. Ricca noted that Plaintiff did not appear to be in pain, and that she was able to get up from a chair briskly without apparent discomfort. Dr. Ricca noted Plaintiff was able to toe walk, heel walk and squat bilaterally.  Dr. Ricca opined that Plaintiff could engage in normal activities. Dr. Ricca recommended continued physical therapy and that Plaintiff could proceed with light duty work.  Dr. Ricca also told Plaintiff that if she were serious about getting better and taking care of her spine she should stop smoking.

On August 1, 2011, Plaintiff was seen at Combs Family Practice complaining of anxiety. (Tr. 735-739).  Plaintiff had not been seen in one year.  Plaintiff was noted to ambulate normally.  Plaintiff's memory, both recent and remote, were noted as normal.  Plaintiff was noted to have a normal gait and station.  Plaintiff was diagnosed with a tobacco use disorder, unspecified hypothyroidism, essential benign hypertension, unspecified anxiety, and lumbago.

### III.    Applicable Law:

-13-

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

-14-

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §§ 404.1520, 416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

With regard to Plaintiff's DWB application, to be entitled to benefits as a disabled widow Plaintiff must be at least fifty years old, but less than sixty years old. 20 C.F.R. § 404.335(c). Furthermore, the alleged disability must have started not less than eighty-four months after either the insured wage earner died or eight-four months after Plaintiff was last entitled to survivor's benefit's, whichever is later. 20 C.F.R. § 404.335.

**IV.**   **Discussion:**

Plaintiff argues the following issues in this appeal: 1) the ALJ erred in finding Plaintiff not credible; 2) the ALJ erred in determining that Plaintiff's left eye impairment was not a severe impairment; and 3) the ALJ's decision was not supported by substantial evidence.

**A.**     **Subjective Complaints and Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily

-15-

activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id.  As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, and the Defendant's well-stated reasons set forth in her brief, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors.  As pointed out by the ALJ, the medical evidence revealed that Plaintiff's back pain was decreased through medication management and physical therapy.  In March of 2011, Plaintiff reported the following to Dr. Ricca, "[i]t's been almost 10 months of pain and I'm finally out of pain." The record further revealed that Plaintiff was able to perform most activities of daily living within normal limits; to spend time shopping and eating out with friends; to go out dancing with friends; and to mow the lawn.  (Tr. 212-219, 692, 699).

The Court would also note that while Plaintiff alleged an inability to seek treatment due to a lack of finances, the record is void of any indication that Plaintiff had been denied treatment due to the lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship).  The record also revealed

-16-

that Plaintiff was able to come up with the funds to support her smoking habit during the relevant time period.

Therefore, although it is clear that Plaintiff suffers with some degree of pain, she has not established that she is unable to engage in any gainful activity.  See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability).  Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**B.      Plaintiff's Impairments:**

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C .F.R. § 404.1520(c).  To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related activities.  See Social Security Ruling 96-3p. The Step Two requirement is only a threshold test so the claimant's burden is minimal and does not require a showing that the impairment is disabling in nature.  See Brown v. Yuckert, 482 U.S. 137, 153-54 (1987).  The claimant, however, has the burden of proof of showing she suffers from a medically-severe impairment at Step Two.  See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000).

Plaintiff argues that the ALJ improperly found Plaintiff's alleged left eye impairment, to be a non-severe impairment.  While the ALJ did not find this alleged impairment to be severe, the ALJ specifically discussed this alleged impairment in the decision, and clearly stated that he considered all of Plaintiff's impairments, including the impairments that were found to be non-severe.  (Tr. 11). See Swartz v. Barnhart, 188 F. App'x 361, 368 (6th Cir.2006) (where

-17-

ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify particular impairment as "severe" at step two is harmless); Elmore v. Astrue, 2012 WL 1085487 *12 (E.D. Mo. March 5, 2012); see also 20 C.F.R. § 416.945(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including ... impairments that are not 'severe' "); § 416.923 (ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").

Furthermore, with regard to Plaintiff's alleged left eye impairment, the medical evidence revealed that in January of 2011, Dr. Ware noted that Plaintiff's vision had improved after the surgery and that she was to return in three months or sooner if she had acute visual changes or problems. As pointed out by the ALJ, the record failed to report that Plaintiff returned to Dr. Ware. Plaintiff also failed to report any visual difficulties at her last medical visit in August of 2011. Based on the foregoing, the ALJ's not finding that Plaintiff's alleged visual impairment to be a severe impairment does not constitute reversible error.

### C.    Fully and Fairly Develop the Record:

While an ALJ is required to develop the record fully and fairly, see Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir.2000) (ALJ must order consultative examination only when it is necessary for an informed decision), the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period. See Strongson v. Barnhart, 361 F.3d 1066, 1071-72 (8th Cir.2004) (ALJ must develop record fully and fairly to ensure it includes evidence from treating physician, or at least examining physician, addressing impairments at issue).

-18-

**D.     The ALJ's RFC Determination:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

"The [social security] regulations provide that a treating physician's opinion ... will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir.2000) (citations omitted).  An ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions.  Id. at 1013. Whether the weight accorded the treating physician's opinion by the ALJ is great or small, the ALJ must give good reasons for that weighting. Id. (citing 20 C.F.R. § 404.1527(d)(2)).

-19-

The Court notes that in determining Plaintiff maintained the RFC to perform light work with limitations, the ALJ specifically discussed the relevant medical records, as well as the opinions of Dr. Vann Arthur Smith, Dr. Gregory Ricca, and Dr. Robert L. Hudson, and set forth the reasons for the weight given to each of these medical professionals.  Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted).  The ALJ also addressed the findings of the non-examining medical consultants.  The Court finds, based upon the well-stated reasons outlined in the Defendant's brief, that Plaintiff's argument is without merit, and there was sufficient evidence for the ALJ to make an informed decision.  Therefore, the Court finds there is substantial evidence of record to support the ALJ's RFC findings for the relevant time period.

### E.    Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.  Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work as a motel housekeeper, a package mail sorter/routing clerk, and a food prep during the relevant time period.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### IV.    Conclusion:

-20-

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 23rd day of May, 2013.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-21-